IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | Crim. Action No. 1:11-CR-115(2) |
| v. | § | |
| | § | JUDGE RON CLARK |
| JOSE ANGEL MORALES-ORTUNO | § | |

**MEMORANDUM ORDER OVERRULING GOVERNMENT'S OBJECTIONS TO PSR**

Defendant Jose Angel Morales-Ortuno pled guilty to one count of conspiracy to possess with the intent to distribute cocaine and one count of being an illegal alien in possession of a firearm, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 922(g)(5), respectively. At sentencing, the Government objected to the failure of the Pre-Sentence Investigation Report to apply a specific offense characteristic listed under United States Sentencing Guidelines Manual § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing a controlled substance.

The court overruled the objection on the record at the June 28, 2012 sentencing hearing. While it was clear that Mr. Morales-Ortuno rented the apartment, had access to it, and had drugs on the premises, the evidence presented did not establish the temporal aspect that distinguishes maintenance for purposes of distribution from mere possession of the premises.

**Applicable Law**

Section 2D1.1(b)(12) was recently added to the Guidelines as part of the 2010 Fair Sentencing Act, and became effective on November 1, 2010. There is little case law interpreting

Section 2D1.1(b)(12): only three district courts, none of which are in the Fifth Circuit, appear to have examined this provision in any context.[1]

Section 2D1.1(b)(12) states: "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase [the base offense level] by two levels." Application note 28 to Section 2D1.1 provides the following guidance regarding subsection (b)(12):

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.
>
> Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

## Discussion

The parties have not cited, and the court has not found, any authority within the Fifth Circuit on Section 2D1.1(b)(12). However, cases interpreting 21 U.S.C. § 856 (the "crack house" statute) are instructive.

Under Section 856(a)(1), it is unlawful to "knowingly . . . maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled

---

[1] *United States v. Ortiz*, 807 F. Supp. 2d 746 (N.D. Ill. 2011); *United States v. Anderson*, 2011 WL 6056601 (D. Kan. Dec. 5, 2011) (in the context of whether the enhancement subjects the Defendant to double jeopardy where he was also sentenced for a violation of 21 U.S.C. § 856(a)(1)); and *United States v. Mazza*, 2011 U.S. Dist. LEXIS 84297 (D. Conn. Aug. 1, 2011). These cases are instructive, but not binding authority.

substance[.]" In *United States v. Morgan*, 117 F.3d 849, 857 (5th Cir. 1997), the court discussed the factors relevant to a finding that a place was "maintained" within the meaning of Section 856. "'Maintain' connotes a degree of continuity and duration that is not an attribute of 'possession.'" In finding that the premises was so maintained, the *Morgan* court emphasized that the Defendant had exercised supervisory control over the apartment, directed customers to the apartment, was connected with the apartment for at least two and a half months, and stored drugs in a location that was not a common area. "[W]hether a defendant has 'maintained' a place is necessarily a fact-intensive issue that must be resolved on a case-by-case basis." *Id.*

*Morgan* was cited with approval in *United States v. Acosta*, 534 F.3d 574 (7th Cir. 2008). The *Acosta* court stated that "an individual 'maintains' a drug house if he owns or rents premises, or exercises control over them, and for a sustained period of time, uses those premises to manufacture, store, or sell drugs, or directs others to those premises to obtain drugs." *Id.* at 519.

Port Arthur Police Department Detective Paul Arvizo testified that on March 30, 2011, police officers observed a controlled buy between Mr. Morales-Ortuno and co-Defendant Jose Marlon Gallegos; Mr. Morales-Ortuno delivered drugs to Mr. Gallegos's residence on 40th Street in Port Arthur. After the buy, officers ascertained the same day that Mr. Morales-Ortuno resided at 5350 Gulfway, Apartment 20, in Port Arthur. A second controlled buy was observed by officers on April 18, 2011.

Officers later learned from the apartment manager that Mr. Morales-Ortuno requested a move to another complex at 3549 25th Street under the same management, also in Port Arthur, on May 1, 2011. Mr. Morales-Ortunuo had signed both apartment leases under an assumed name, and paid the rent using that same assumed name. On July 30, 2011, Mr. Morales-Ortuno and one of his co-

Defendants in this case, J. Jesus Pineda-Pineda, were observed approaching a certain apartment in the 25th Street complex. Mr. Pineda-Pineda used a key to enter the residence.

Two final controlled buys took place on July 28, 2011 and August 3, 2011, after the move to the 25th Street apartment. Both of these controlled buys involved Mr. Pineda-Pineda as the participant, not Mr. Morales-Ortuno.

Officers obtained a search warrant for the 25th Street apartment after the August 3 controlled buy. The apartment was somewhat sparsely furnished, with a bed, a sofa, a television, and a television stand. About 180 grams of cocaine was discovered in the apartment. When arrested, neither Mr. Morales-Ortuno nor Mr. Pineda-Pineda carried any identification documents that had the 25th Street apartment listed as their address. However, copies of lease agreements were obtained from the apartment manager, which had been signed by Mr. Morales-Ortuno using a pseudonym.

Detective Arvizo testified that the actual drug transactions observed took place at locations other than the 25th Street apartment—i.e., they occurred at co-Defendant Jose Marlon Gallegos's residence on 40th Street in Port Arthur. Mr. Morales-Ortuno delivered the drugs during the March 30 and April 18 controlled buys, and both of these buys occurred while Mr. Morales-Ortuno was still occupying the Gulfway apartment. The July 28 and August 3 controlled buys occurred after the move to the 25th Street apartment, and officers did not observe Mr. Morales-Ortuno participating in either. Rather, his co-Defendant Mr. Pineda-Pineda made the delivery.

Given the limited time the 25th Street apartment was controlled by Mr. Morales-Ortuno—less than a week between the July 28 and August 3 controlled buys; the fact that no drug activity was actually observed at the 25th Street apartment; and Mr. Morales-Ortuno's non-participation in the July 28 and August 3 controlled buys, the court concludes that applying the

4

Section 2D1.1(b)(12) enhancement would not be appropriate. The court finds the evidence establishes possession of the 25th Street apartment by Mr. Morales-Ortuno, but not the maintenance of the premises for the purpose of manufacturing or distributing a controlled substance.[2]

So **ORDERED** and **SIGNED** this **23** day of **July, 2012.**

_____
Ron Clark, United States District Judge

---

[2]The court expresses no opinion as to whether application of the maintenance enhancement would be warranted where there was evidence that a drug dealer was attempting to evade surveillance or capture by police by repeatedly moving between two or more premises he possessed.